**UNITED STATES of America**

v.

**Jose ROBLES, Defendant.**

**No. 08 Cr. 1114 (RWS).**

United States District Court, S.D. New York.

Nov. 22, 2011.

---

Michael Douglas Maimin, U.S. Attorney's Office, SDNY (St Andw's), New York, NY, United States of America.

Scott B. Tulman, Law Offices of Scott B. Tulman, Jenny Jianhong Zhao, Wong, Wong & Associates, P.C., New York, NY, for Jose Robles.

## SENTENCING OPINION

SWEET, District Judge.

It is a rare and sad occasion as a judge that I am required by my oath to enforce unjust and ill-advised enactments of Congress. Today I am asked to do such a thing.

On February 11, 2011, Jose Robles, ("Robles" or the "Defendant") was convicted of one count of conspiracy to commit Hobbs Act robberies, in violation of 18 U.S.C. § 1951, three counts of committing Hobbs Act robberies, in violation of 18 U.S.C. § 1951 & 2, and two counts of brandishing a firearm during those robberies, in violation of 18 U.S.C. § 924(c)(1)(A). In plainer terms, Robles and his co-conspirators robbed two Radio Shack stores and one gas station. No one was injured during any of the robberies.

For the reasons set forth below, Robles will be sentenced to 32 years' imprisonment. Robles' imprisonment will be followed by 3 years' supervised release. He will also be required to make full restitution to the victims of his crimes in an amount to be specified, and will be required to pay a special assessment of $600.

This period of incarceration is imposed pursuant to 18 U.S.C. § 924(c)(1), which requires a seven year mandatory minimum sentence for the brandishing of a firearm during certain crimes and a twenty-five year sentence for brandishing a firearm during a second or subsequent such crime, each to run consecutively, and even if those crimes are charged in the same instrument, as here. This 32–year mandatory minimum is imposed by Congress on all defendants, no matter the circumstances of their crimes, the contexts in which they were committed, or the histories or characteristics of the defendants.

The United States Sentencing Commission has recently released a comprehensive report on statutory mandatory minimums, including the "stacking" of sentences under § 924(c) that is required here. The Sentencing Commission has called for Congress to re-examine these provision because, as the chair of the Commission stated at the report's issuance, "the Commission unanimously believes that certain mandatory minimum penalties apply too broadly, are excessively severe, and are applied inconsistently across the country." Judge Patti B. Saris, "Sentencing Commission Issues Comprehensive Report on Statutory Mandatory Minimum Penalties: Sends Recommendations for Statutory Changes to Congress," *available at* http://www.ussc.gov/Legislative_and_Public_Affairs/Newsroom/Press_Releases/20111031_Press_Release.pdf.

The instant case illustrates the wisdom of the Sentencing Commissions' unanimous conclusion. Mandatory minimums cut with blunt, and here unreasonably severe, force. The sentencing of defendants involves necessarily unique individuals who have committed specific crimes, in particular contexts. It does our justice system a

disservice, and our people a profound moral injustice, to sentence individuals arbitrarily to terms that may take their very lives away and subject their families to economic duress without permitting the judge charged with the sentencing to consider the factors Congress itself has deemed appropriate in 18 U.S.C. § 3553(a). These mandates are overly punitive, without empirical basis, costly, and, above all, a profound moral failing.[1]

### Prior Proceedings

On February 24, 2010, Indictment S108CR1114(RWS) was filed in the Southern District of New York.

Count 1 of that indictment charges that from at least October 2005, through October 2006, in the Southern District of New York and elsewhere, Robles, Luis Celado, a/k/a "Danny," ("Celado"), and Jose Rodriguez, a/k/a/ "Aneudi," ("Rodriguez"), and others conspired to rob, as that term is defined in 18 U.S.C. § 1951(b)(1), various businesses engaged in interstate commerce, including Radio Shack stores and a gas station in the Bronx, New York, in violation of 18 U.S.C. § 1951.

Count 2 charges that on October 15, 2005, in the Southern District of New York, Robles, Celado, and one or more others robbed a Radio Shack store in the Bronx, New York, in violation of 18 U.S.C. § 1951 & 2.

Count 3 charges that on November 15, 2005, in the Southern District of New York, Robles, Celado, and one or more others robbed a Radio Shack store in the Bronx, New York, in violation of 18 U.S.C. § 1951 & 2.

Count 4 charges that on October 2, 2006, in the Southern District of New York, Robles, Rodriguez, and one or more others

---

**1.** For these reasons, this opinion will be sent to the U.S. Sentencing Commission as well as the Chairmen of the appropriate Congressional Committees.

robbed two employees while they were transporting the proceeds of the gas station where they worked in the Bronx, New York, in violation of 18 U.S.C. § 1951 & 2.

Count 5 charges that on October 15, 2005, in the Southern District of New York, Robles and Celado brandished a firearm during the robbery of a Radio Shack store in the Bronx, New York, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) & 2.

Count 6 charges that on November 15, 2005, in the Southern District of New York, Robles and Celado brandished a firearm during the robbery of a Radio Shack store in the Bronx, New York, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), 924(c)(1)(C)(i) & 2.

On February 11, 2011 Robles was found guilty as charged.

On September 10, 2010, Celado allocated to Count 1 only, before the Honorable Theodore H. Katz. His plea was accepted by this Court on October 5, 2010. On October 3, 2011, Celado was sentenced to 40 months' probation with a special condition of home detention. The case against Rodriguez remains pending.

Robles' sentencing is currently scheduled for December 5, 2011.

### The Sentencing Framework

In accordance with the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and the Second Circuit's decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines. Thus, the sentence to be imposed here is the result of the consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5) any pertinent policy statement ... [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. *See Crosby*, 397 F.3d at 114–15.

### The Defendant

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Robles' personal and family history. Of note, Robles is currently 29 years old. He has been in a committed relationship with Francia Ortiz, who he met in high school, for over 10

years. They have a son, Kevin, who is currently 9 years old. Ortiz describes Robles as a good father who was actively involved in caring for their son.

### The Offense Conduct

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

From at least October 2005 through October 2006, several individuals, including Robles, Celado, and Rodriguez, comprised a loosely knit group that committed armed robberies of business establishments in New York City. Radio Shack stores were a particular target of this group since Robles and Celado worked for Radio Shack either prior to, or during the course of, the robberies. There was no known leadership structure within the group. It appears that various individuals got together to participate in certain robberies.

*October 15, 2005, Robbery of Radio Shack*

Some time prior to mid-October 2005, Robles, Celado, and at least one co-conspirator ("CC–1") discussed robbing a Radio Shack store located at 220 East 161st Street in the Bronx, N.Y. ("Radio Shack Store–1"). As Celado was an employee of this store, he provided insight concerning the store's operation and procedures.

On October 15, 2005, at approximately 7:57 p.m., while four employees of Radio Shack Store–1, including Celado, were preparing to close the store for the business day, Robles and CC–1 entered the store. They brandished firearms and ordered the employees to the ground. One of the robbers kicked two of the employees in the shoulder and back. Robles or CC–1 then ordered Celado to empty the store's register of all its cash. Celado subsequently handed approximately $4,500 in cash to the robbers before they fled the area. Celado pretended to be a victim throughout the

robbery and while providing a statement to the investigating NYPD officers.

*November 15, 2005, Robbery of Radio Shack*

On November 15, 2005, at approximately 8:55 p.m., Robles and CC–1 entered a Radio Shack store located at 2476 Grand Concourse in the Bronx, N.Y. ("Radio Shack Store–2"). At the time, there were three employees in the store. Robles and CC–1 brandished firearms, and they ordered the employees to the back of the store, where they duct-taped their hands and eyes. The employees stated that after their eyes were taped, they heard additional individuals in the store; the investigation determined that Celado was one of the participants who entered the store after the employees' eyes were taped shut. The robbers stole more than 500 cell phones and other merchandise valued at approximately $100,000. They also stole personal property from the employees, including $52 in cash, a Kenneth Cole watch, a bank debit card, a New York State learner's permit, a New York State driver's license, and a student ID card from Lehman College.

*October 2, 2006, Robbery of Gas Station Proceeds*

On October 2, 2006, at approximately 10:00 a.m., Robles, Rodriguez, and a co-conspirator ("CC–2") robbed two employees of the St. Michael Service Station, a gas station located at 102–08 Yonkers Avenue in Yonkers, NY. The gas station's two employees (the "Gas Station Victims") were in a vehicle that stopped at a red light near the corner of the Major Deegan Expressway and West 230th Street in the Bronx. Robles, Rodriguez, and CC–2, who were traveling in a Nissan Quest and were following the Gas Station Victims' vehicle, exited their vehicle at the light and approached the other vehicle. Robles, Rodriguez and CC–2 then brandished firearms

and demanded "the bag" from the Gas Station Victims. The Gas Station Victims were on their way to a bank to deposit proceeds generated from the St. Michael Service Station. One of the defendants subsequently opened the back door of the Gas Station Victims' vehicle and removed the bag containing the proceeds. They also robbed one of the Gas Station Victims of her pocketbook, which contained an Apple iPod, Donna Karan sunglasses, a pair of earrings, credit cards, Social Security card, insurance card, checkbook, driver's license, and other identification cards.

After robbing the Gas Station Victims, Robles, Rodriguez, and CC–2 returned to their vehicle and fled the scene. Soon thereafter, the Gas Station Victims contacted the NYPD. In a complaint filed with the NYPD, they stated that $33,460 in cash was stolen during the robbery. Additionally, the female victim valued the stolen iPod at $540 and the Donna Karan sunglasses at $250, and the earrings at $70.

On October 14, 2008, Robles was arrested by NYPD detectives. Celado and Rodriguez were arrested on February 25, 2010. As earlier noted, on September 10, 2010, Celado pleaded guilty to conspiracy to commit Hobbs Act robberies. The case against Rodriguez is pending.

### The Relevant Statutory Provisions

For Count 1 through 4, pursuant to 18 U.S.C. § 1951, the maximum term of imprisonment is 20 years on each count. For Count 5, a seven-year term of imprisonment is mandatory and must run consecutively to any other term of custody imposed, pursuant to 18 U.S.C. § 1924(c)(1)(A)(ii). For Count 6, a 25–year term of imprisonment is mandatory and must run consecutively to any other term of custody imposed, pursuant to 18 U.S.C. § 1924(c)(1)(A)(ii) & 1924(c)(1)(C)(i).

For Counts 1 to 4, if a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than 3 years, on each count, pursuant to 18 U.S.C. § 3583(b)(2). For Counts 5 to 6, if a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than 5 years, on each count, pursuant to 18 U.S.C. § 3583(b)(1). Terms of supervised release run concurrently, pursuant to 18 U.S.C. § 3624(e).

■ On Counts 1 through 4, the Defendant is not eligible for probation because he is being sentenced at the same time to a term of imprisonment on different counts, pursuant to 18 U.S.C. § 3561(a)(3). For Counts 5 and 6, the Defendant is not eligible for probation because the instant offenses are ones for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2) and 18 U.S.C. § 924(c).

For Counts 1 to 6, the maximum fine that may be imposed is $250,000 on each count, pursuant to 18 U.S.C. § 3571.

For Counts 1 to 4, full restitution to the victims is required under 18 U.S.C. § 3663A & 3664.

A special assessment of $600 is mandatory, pursuant to 18 U.S.C. § 3013.

### The Guidelines

The November 1, 2011 edition of the *United States Sentencing Commission Guidelines Manual* has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

Since the Defendant was named in all three robbery acts, as outlined in Counts 2 to 4, each of these robberies comprises its own separate group for Guideline calcula-

tion purposes, pursuant to § 1B1.2(d) and § 3D1.2. Count 1 is grouped with Counts 2 to 4, pursuant to § 3D1.2, because the offense involved the same acts and victims.

*Group 1: October 15, 2005 Robbery.* The Guideline for the violation of 18 U.S.C. § 1951 is found in § 2B3.1, which provides for a base offense level of 20, pursuant to § 2B3.1(a). Since the Defendant was found guilty of brandishing a firearm in relation to this robbery, under 18 U.S.C. § 924(c) and as reflected in Count 5, no firearm enhancement is warranted, pursuant to § 2B3.1(b)(2)(C). Accordingly, the adjusted offense level for Group 1 is 20.

*Group 2: November 15, 2005 Robbery.* The Guideline for the violation of 18 U.S.C. § 1951 is found in § 2B3.1, which provides for a base offense level of 20, pursuant to § 2B3.1(a). Because the Defendant was found guilty of brandishing a firearm in relation to this robbery, under 18 U.S.C. § 924(c) and as reflected in Count 6, no firearm enhancement is warranted, pursuant to § 2B3.1(b)(2)(C). Since a victim was restrained to facilitate the commission of the robbery, pursuant to § 2B3.1(b)(4)(B), a two-level increase is warranted. Because the robbery caused a loss of more than $50,000 but not more than $250,000, pursuant to § 2B3.1(b)(7)(C), a two-level increase is warranted. Accordingly, the adjusted offense level for Group 2 is 24.

*Group 3: October 2, 2006 Robbery.* The Guideline for the violation of 18 U.S.C. § 1951 is found in § 2B3.1, which provides for a base offense level of 20, pursuant to § 2B3.1(a). Although the Defendant and others brandished firearms during the courts of the robbery, no firearm enhancement is warranted, pursuant to § 2B3.1(b)(2)(C). Since the robbery caused a loss of more than $10,000 but not more than $50,000, pursuant to § 2B3.1(b)(7)(B), a one-level increase is

warranted. Accordingly, the adjusted offense level for Group 3 is 21.

Pursuant to § 3D1.4, the combined multiple count adjusted offense level is 27, representing a three-level increase from the greatest of the adjusted offense levels for each group.

Accordingly, the applicable offense level is 27.

On September 7, 2006, Robles was arrested and charged with Criminal Possession of a Narcotic Drug in the Fourth Degree. On December 19, 2006, in Bronx County Supreme Court, Defendant was sentenced to 5 years' probation and his driver's license was suspended for 6 months. Pursuant to § 4A1.1(c) and § 4A1.2(e)(2), this conviction warrants one criminal history point.

On October 26, 2006, Robles was arrested and charged with Criminal Possession of a Weapon in the Fourth Degree. On November 1, 2006, in Bronx County Supreme Court, Defendant was ordered to pay a $750 fine. Pursuant to § 4A1.1(c) and § 4A1.2(e)(2), this conviction warrants one criminal history point.

A total of two criminal history points establishes a Criminal History Category of II, pursuant to the table at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of 27 and a Criminal History Category of II, for Counts 1 to 4, the Guideline range for imprisonment is 78 to 97 months. The sentence imposed under this range must be followed by the mandatory and consecutive 84–month term of imprisonment on Count 5, and then a 300–month term of imprisonment on Count 6, pursuant to § 2K2.4(b). Thus, the Guideline range becomes 462 to 481 months' imprisonment.

For Counts 1 to 4, the Guideline range for a term of supervised release is at least

2 years but not more than 3 years, pursuant to § 5D1.2(a)(2). For Counts 5 and 6, the Guideline range for a term of supervised release is at least 3 years but not more than 5 years, pursuant to § 5D1.2(a)(2).

For Counts 1 to 4, the Defendant is not eligible for probation because he is being sentenced at the same time to a term of imprisonment on different counts, pursuant to § 5B1.1(b)(1). For Counts 5 and 6, the Defendant is not eligible for probation because the instant offenses are ones for which probation has been expressly precluded by statute, pursuant to § 5B1.1(b)(2).

The fine range for the instant offense is from $12,500 to $125,000, pursuant to § 5E1.2(c)(3)(A) & (B). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,357.01 to be used for imprisonment, a monthly cost of $328.20 for supervision, and a monthly cost of $2,153.22 for community confinement.

Pursuant to § 5E1.1(a)(1), in case of an identifiable victim, the Court shall enter a restitution order for the full amount of the victim's loss if such order is authorized under 18 U.S.C. § 3663A.

### The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in *Booker*, 543 U.S. 220, 125 S.Ct. 738, and the Second Circuit's decision in *Crosby*, 397 F.3d 103.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," *Kimbrough v. United States*, 552 U.S. 85, 102, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is concluded that a downward departure from the Guidelines sentence is warranted in the instant case.

Under 18 U.S.C. § 3553(a)(1), the Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant." Pursuant to 18 U.S.C. § 3553(a)(2)(A), the Court weighs the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. Under 18 U.S.C. § 3553(a)(2)(B) & (C), the Court considers the need for the sentence imposed to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant.

Robles was 23 at the time of the first robbery and is currently 29 years of age. He is in a committed relationship and the father of a young son, aged 9, and appears to be an attentive father and partner. According to the PSR, the Defendant has a supportive family. The criminal conduct here involved the robbery of two Radio Shacks and the proceeds of a gas station. No one was injured in the course of those crimes. Even under the mandatory minimum term, Robles will be well into middle age when released to the community. Robles' co-conspirator, Celado, who pleaded only to Count 1, had no prior convictions, and did not personally brandish a weapon, was sentenced to 40 months' home confinement.

In light of the nature and circumstances of the offense and the history and characteristics of the Defendant, the need for the sentence to provide just punishment for the offense and afford adequate deterrence to criminal conduct and protect the public from the Defendant's further crimes, as well as the need to avoid unwarranted sentence disparities, the Court finds that a downward departure from the Guideline sentencing range of a staggering 462 to 481 months' imprisonment is appropriate and will impose more than a "sufficient" sentence under 18 U.S.C. § 3553(a).

Congress has directed sentencing courts to impose sentences that are "not greater than necessary." 18 U.S.C. § 3553(a). While Robles' actions were unlawful, frightening, and above all stupid, the mandatory minimum sentence of 32 years is inappropriate and plainly not necessary. Far more serious offenders receive a mere fraction of that which must be imposed on Robles today.

As the United States Sentencing Commission noted in its recent report, the "stacking" of mandatory minimum penalties for certain federal firearms offenses, as is required here, may result in "excessively severe and unjust" penalties, particularly in circumstances where, as here, no one is physically harmed. United States Sentencing Commission, *Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* 359 (Oct. 2011) (*"Report"*), *available at* http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Mandatory_Minimum_Penalties/20111031_RtC_Mandatory_Minimum.cfm. As that report details:

> The Judicial Conference of the United States has historically opposed mandatory minimum penalties, but it has rarely articulated a policy position with respect to particular mandatory minimum sentencing provisions. Evidencing the strength of its opposition to the stacking of mandatory minimum penalties under section 924(c), the Judicial Conference has urged Congress on at least two occasions to amend the "draconian" penalties established at section 924(c) by making it a "true recidivist statute, if not rescinding it all together." The Judicial Conference has supported its position by observing that the sentences resulting from stacking section 924(c) mandatory minimum penalties are "greater by many years" than the guideline sentences for offenders who commit the most serious, violent crimes.

*Report* at 360–61. Chief Judge Julie Carnes was correct in identifying, on behalf of the Judicial Conference of the United States, the stacking of penalties under section 924(c) as among the "most egregious mandatory minimum provisions that produce the unfairest, harshest, and most irrational results." Chief Judge Julie Carnes, *Mandatory Minimums and Unintended Consequences; Hearing on H.R. 2934, H.R. 834, and H.R. 1466 Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, 111th Cong. 60–61 (2009).

Such a draconian sentence results here.

### The Sentence

For the instant offense, Robles will be sentenced to 384 months' imprisonment and 3 years' supervised release.

Robles is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence his term of supervised release. It is recommended that Defendant be supervised by the district of his residence.

As mandatory conditions of his supervised release, Robles shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled sub-

stance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer. The Defendant shall refrain from any unlawful use of a controlled substance and shall submit to one drug testing within fifteen (15) days of placement on probation or supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer.

Furthermore, the standard conditions of supervision (1–13), as set forth in the judgment, shall be imposed with the additional special conditions:

(1) Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

(2) Defendant shall provide the probation officer with access to any requested financial information.

(3) Defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless Defendant is in compliance with the installment payment schedule.

(4) Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

The Court finds that the victims have suffered injuries compensable under the Victim and Witness Protection Act, including Radio Shack, several of its employees, the owner of the St. Michael Service Station, and one of its employees. The Government shall furnish information concerning restitution, including the names of all of the victims, their corresponding loss amounts and their contact information, at the time of the Defendant's sentencing. If this information is not available at the time of sentencing, the Court will set a date for the final determination of the victims' losses not more than 90 days after sentencing, pursuant to 18 U.S.C. § 3664(d)(5).

Any restitution payments should be addressed to the Clerk of Court and should list the Defendant's name and his corresponding docket number. The Clerk of Court shall then forward any restitution payments to the victims. Contact information for Radio Shack is available and is listed below:

Radio Shack Loss Prevention

300 Radio Shack Circle, Suite CF4–334

Fort Worth, TX 76102

Contact Person: Scott Camerata, Regional Loss Prevention Manager for the New York Metro Area, (201) 556–8210, scott.camerata@radioshack.com

It is ordered that the Defendant make restitution to such persons, except that no further payment shall be required after the sum of the amounts actually paid by all defendants has fully covered all of the compensable injuries. Any payment made by the Defendant shall be divided among the persons named in proportion to their compensable injuries.

If the Defendant is engaged in a BOP non-UNICOR work program, he shall pay $25 per quarter toward the criminal financial penalties. However, if the Defendant participates in the BOP's UNICOR program as a grade 1 through 4, the Defendant shall pay 50% of his monthly UNICOR earnings toward the criminal financial penalties, consistent with BOP regulations at 28 C.F.R. 545.11.

The remaining restitution balance, following the Defendant's release from imprisonment, shall be paid in monthly installments of 15% of gross monthly income over a period of supervision to commence 30 days after the date of the judgment or the release from custody if imprisonment is imposed.

The Defendant shall notify the United States Attorney for this district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), including the amount of the restitution owed in this case, it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

A special assessment of $600, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for December 5, 2011.

The contemplated sentence is harsh, unfair, and irrational, but notwithstanding is required by law. Congressional action is needed to prevent similar results in the future.

It is so ordered.